UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:15-cr-10060 |
| ) | |
| MAURICE ELLIS, ) | |
| ) | |
| Defendant. ) | |

# ORDER

This matter is before the Court on Defendant Maurice Ellis's second Motion for Compassionate Release. (Dkt. 56). For the following reasons, Defendant's request is denied, as is his request for counsel to prosecute that motion.

### BACKGROUND

On September 7, 2016, this Court sentenced Defendant to 180 months of imprisonment in the Bureau of Prisons ("BOP") for the offense of Possession of Heroin with Intent to Distribute, to be followed by an eight-year term of supervised release. (Dkt. 51 ¶ 1). He is housed at United States Penitentiary (USP) Victorville and has an expected release date of March 28, 2029. *Id.* ¶ 2. Defendant is fifty years of age. *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (search for Maurice Ellis) (last visited May 18, 2022).

Defendant alleges he should be released because he believes he is not receiving sufficient medical care in prison for his spinal stenosis, which he fears will develop

into cauda equina syndrome. (Dkt. 56). Defendant provided no medical documentation in support of the instant motion.

"Spinal stenosis is a narrowing of the spaces within your spine, which can put pressure on the nerves that travel through the spine." *Spinal Stenosis*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/spinal-stenosis/symptoms-causes /syc-20352961 (last visited May 19, 2022). "Symptoms vary depending on the location of the stenosis and which nerves are affected" but may include numbness, tingling, or weakness in extremities; difficulties with walking and balance; neck or back pain; leg pain or cramping; and (in severe cases) bowel or bladder dysfunction. *Id.* "In rare cases, spinal stenosis . . . can lead to cauda equina syndrome." *Cauda Equina Syndrome*, Columbia University: Neurosurgery, https://www.neurosurgery.columbia. edu/patient-care/conditions/cauda-equina-syndrome (last visited May 19, 2022).

> Cauda equina syndrome can cause a variety of symptoms, including:
> - severe low back pain
> - bladder dysfunction such as urinary retention or incontinence (loss of control)
> - bowel incontinence (loss of control)
> - muscle weakness or sensory loss in both legs
> - loss of motor function in legs (difficulty walking)
> - loss or reduction of reflexes
> - saddle anesthesia (inability to feel anything in the body areas that would sit on a saddle)
>
> Exact symptoms and their severity depend on which nerve root(s) are affected and the degree to which they are compressed.

*Id.*

## LEGAL STANDARD

The First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to ask the sentencing court for compassionate release. Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239. The decision whether to grant compassionate release is within a district judge's discretion, the standard for which is set by § 3582(c)(1)(A). *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). Under the statute, there are three requirements.

First, a defendant may not bring a compassionate release motion until either (a) the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (b) 30 days lapse "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A). To properly exhaust, the defendant must have "present[ed] the same or similar ground for compassionate release in a request to the Bureau as in [the] motion to the court." *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). This administrative exhaustion requirement, though not a jurisdictional prerequisite, is a mandatory claims-processing rule that must be enforced when properly invoked. *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021).

Second, the defendant must either be at least 70 years of age and have served 30 years of the sentence for which the defendant is currently imprisoned, § 3582(c)(1)(A)(ii), or demonstrate "extraordinary and compelling reasons" for release consistent with any applicable policy statement issued by the United States

Sentencing Commission, § 3582(c)(1)(A)(i). The only relevant policy statement, U.S.S.G. § 1B1.13, is not currently binding on district judges, but it provides a "working definition of 'extraordinary and compelling reasons' " that can "guide [judicial] discretion without being conclusive." *Gunn*, 980 F.3d at 1180. Subsections (A)–(C) of the Application Note to § 1B1.13 enumerate three specific circumstances that qualify as "extraordinary and compelling reasons": (A) diagnosis of a terminal illness or serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) "death or incapacitation of the caregiver of the defendant's minor child" or the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13, Application Note 1(D).

Third, if the Court finds the Defendant has shown extraordinary and compelling reasons for compassionate release, the Court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." § 3582(c)(1)(A); *United States v. Ugbah*, 4 F.4th 595, 597 (U.S. 7th Cir. 2021) ("Only after finding an extraordinary and compelling reason for release need the judge . . .

consider any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner.").

## DISCUSSION

Defendant had the same apparent spinal stenosis diagnosis (*see* dkt. 54-1 at 5) when he last moved for compassionate release, which the Court denied (dkt. 55). Defendant had not exhausted his claim, so the Court did not explicitly address the merits of Defendant's motion on that occasion. However, the undersigned would have ruled against Defendant on the merits for the same reasons it does now.

This time Defendant appears to have exhausted his claim, as more than thirty days have passed since he raised it in a request to the warden of his facility on March 21, 2022. (*See* dkt. 56 at 2). Now the Court must determine whether Defendant's condition is an extraordinary and compelling reason warranting compassionate release. There is one relevant policy statement from the United States Sentencing Commission, U.S.S.G. § 1B1.13, but it is not binding on the Court here, as such policy statements do not apply to compassionate-release requests made by prisoners themselves, as opposed to requests made by the Bureau of Prisons. *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021). Subsection (A) of the Application Note to § 1B1.13 states that a terminal illness or a serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" is an extraordinary and compelling reason for compassionate release.

Subsection (A) is not satisfied here. Defendant's condition, spinal stenosis, is not terminal. There is no evidence beyond Defendant's word that his condition substantially diminishes his capacity for self-care. And Defendant may be expected to recover, as spinal stenosis can be treated with medication, physical therapy, injections, image-guided lumbar decompression, or surgery. *Spinal Stenosis*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/spinal-stenosis/diagnosis-treatment/drc-20352966. Moreover, even if Defendant's condition did satisfy Subsection (A), the Court is not bound by that subsection here. Accordingly, the Court finds that Defendant's condition is not extraordinary and compelling.

Even if Defendant's condition were extraordinary and compelling, "courts are not compelled to release every prisoner with extraordinary and compelling health concerns." *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021). 18 U.S.C. § 3553(a)'s factors counsel against Defendant's early release, especially given Probation's judgment that Defendant is "considered a high risk for recidivism." (Dkt. 51 at 2 ¶ 10).

> . . . Ellis's criminal history [is] both violent and lengthy, earning him a career offender designation. His convictions include: unlawful possession of heroin (1992, prison, parole violation); unlawful possession of controlled substance (1992, prison, parole violation); felon in possession of firearm (1994, prison); unlawful possession of controlled substance (1996, prison, parole violation); manufacture/delivery of a controlled substance (1996, prison, parole violation); aggravated vehicle hijacking/handicapped (1997, prison, parole violation); retail theft (2004, misdemeanor, court supervision); attempt obstructing justice (2005, misdemeanor, county jail time); retail theft (2005, prison, parole violation); unlawful possession of controlled substance (2009, prison), unlawful possession of controlled substance (2010, prison, parole violated by instant offense); and manufacture/delivery of heroin (2010,

> prison, parole violated by instant offense). [Revised Presentence Report, dkt. 26] ¶31-43.
>
> The [Revised Presentence Report] notes that Ellis was on parole for the 2010 drug convictions of unlawful possession of controlled substance and manufacture/delivery of heroin when he committed the instant offense. [Revised Presentence Report, dkt. 26] ¶42-43.

(Dkt. 52 at 7–8 (bolding omitted)). A sentence reduction would undermine the seriousness of Defendant's history of drug trafficking and instant conviction for possession of heroin with intent to distribute and would not promote respect for the law, provide just punishment, or adequately deter criminal conduct. Were Defendant's condition extraordinary and compelling, the undersigned would still not grant Defendant compassionate release here.

There is no guarantee Defendant would receive better medical care outside prison were he released, as he assumes. Instead, the Court expects that Federal Correctional Institution (FCI) Pekin will act on Defendant's ailments and provide him with adequate medical care, which he is entitled to receive. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

Lastly, Defendant has no right to counsel for a compassionate release motion like this one. *See United States v. Vasquez*, No. 21-1706, 2022 U.S. App. LEXIS 11223, at *2 (7th Cir. Feb. 2, 2022) (citing *United States v. Blake*, 986 F.3d 756, 758 (7th Cir. 2021)). "[T]he Criminal Justice Act, 18 U.S.C. § 3006A, also does not entitle a defendant to appointed counsel at public expense when seeking a lower sentence under § 3582(c). District judges have discretion to recruit and sometimes appoint counsel . . . , but prisoners do not have a constitutional or statutory entitlement to

7

appointed counsel." *Blake*, 986 F.3d at 758 (citations omitted). Given the Court's analysis above and the fact that Defendant was appointed counsel for his substantially similar compassionate release motion, which was denied a mere two months ago (dkt. 55), the Court declines to provide counsel for Defendant.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's second Motion for Compassionate Release (dkt. 56) is DENIED, as is his request for counsel to prosecute that motion.

SO ORDERED.

Entered this 20th day of May 2022.

s/ Joe B. McDade<br>
JOE BILLY McDADE<br>
United States Senior District Judge