**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        Plaintiff,<br><br>v.<br><br>MAURICE ELLIS,<br>        Defendant. | Case No. 1:15-CR-10060-JEH-1 |

**Order**

Now before the Court is the Defendant, Maurice Ellis's, *pro se* motion for compassionate release (D. 62) and his counseled motion to reduce sentence (D. 74). [1] For the reasons stated, *infra*, the motions are denied.

**I**

Ellis's efforts to secure compassionate release are extensive and marked by multiple filings and denials. Ellis, who is serving a 180-month sentence for possession of heroin with intent to distribute, has filed several motions for compassionate release, citing various health concerns and the risks posed by the COVID-19 pandemic.

Ellis's initial motion for compassionate release was filed on January 19, 2022, by his attorney, Hugh F. Toner III.  In this motion, Ellis argued that his health conditions, including PTSD, spinal stenosis, and other ailments, combined with the COVID-19 pandemic, constituted extraordinary and compelling reasons for his release.  However, the Court denied this motion on March 10, 2022, primarily

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

1

because Ellis had not exhausted his administrative remedies with the Bureau of Prisons.

Subsequently, Ellis filed a second motion for compassionate release on May 16, 2022, again citing his deteriorating health and the risk of COVID-19. This motion was also denied on May 20, 2022, as Ellis failed to provide sufficient medical documentation to support his claims, and the Court found that his condition did not meet the criteria for extraordinary and compelling reasons for release. The Court also noted that Ellis's criminal history and the nature of his offense weighed against his release.

Ellis's motions have consistently been challenged by the Government, which has argued that his medical conditions are being adequately managed within the BOP and that his release would not align with the sentencing factors outlined in 18 U.S.C. § 3553(a). Despite Ellis's claims of inadequate medical care and the potential for his spinal stenosis to develop into cauda equina syndrome, the Court has consistently concluded that his conditions do not substantially diminish his ability to provide self-care within the correctional facility.

In summary, Ellis's previous attempts to secure compassionate release have been unsuccessful due to procedural shortcomings, insufficient evidence of extraordinary and compelling reasons, and the Court's assessment of the § 3553(a) factors. The Court has consistently found that Ellis's medical conditions, while serious, do not warrant a reduction in his sentence, and his criminal history further militates against his release.

In his latest *pro se* motion, Ellis asserts he is eligible for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) for a variety of reasons.

Health Concerns: Ellis asserts that his deteriorating health constitutes extraordinary and compelling reasons for his release. He reports several serious medical conditions that have not been adequately addressed during his

2

incarceration. Specifically, Ellis highlights a 2 cm cyst on the right side of his thyroid, which has been described by an off-site radiologist as consistent with malignancy until proven otherwise. Additionally, he mentions a mass on his descending colon that is considered worrisome and requires further evaluation, as well as an unknown mass on the right side of his heart that needs to be biopsied. Ellis also suffers from severe spinal stenosis, which he claims is being ignored, and he has been diagnosed with several other conditions, including hyperlipidemia, hypertension, opioid use disorder, major depressive disorder, anxiety disorder, sleep apnea, and prediabetes.

Family Circumstances: Ellis indicates that his family is prepared to support him upon release. He has proposed a release plan that includes living with his family, who will assist with his medical, physical, and financial needs. His family is willing to help him attend all necessary medical appointments and comply with probation requirements.

Rehabilitation Efforts: Ellis emphasizes his efforts towards rehabilitation while incarcerated. He has completed several educational and therapeutic programs, including the "Threshold" spiritual base program and the "Challenge Program," which focuses on changing criminal thinking patterns. He has also participated in various classes aimed at preparing him for reintegration into society, receiving certificates for his achievements.

Delay in Medical Treatment: Ellis argues that the delay in receiving necessary medical treatment further justifies his release. He notes that it took four months to receive a response to his request for compassionate release from the warden, and he experiences significant delays in being sent offsite for medical emergencies, except in cases of life-threatening conditions.

Risk of Further Health Deterioration: Ellis expresses concern that his health will continue to deteriorate if he remains incarcerated without proper medical

care. He fears that the lack of timely and adequate medical attention could lead to life-threatening consequences, as has happened to other inmates at his facility.

The Government filed a response to the initial *pro se* motion, arguing that he has not demonstrated extraordinary and compelling reasons for such a release, and that the factors outlined in 18 U.S.C. § 3553(a) weigh against granting his request.

The Government contends that Ellis has failed to present extraordinary and compelling reasons for release. Although Ellis claims to suffer from serious medical conditions, including a potentially malignant thyroid cyst, a mass in his colon, a mass on his heart, and spinal stenosis, the Bureau of Prisons is providing appropriate medical care. Ellis's conditions are being managed with medications and scheduled medical procedures, including a biopsy and consultations for further evaluations.  The Government argues that Ellis's medical conditions do not substantially diminish his ability to provide self-care within the correctional facility, nor do they meet the criteria for severe, terminal, or end-of-life conditions.

The Government also again asserts that the § 3553(a) factors weigh against Ellis's release. Ellis has a significant criminal history, including multiple felony convictions for drug trafficking and other offenses. At the time of his current offense, he was on parole for a similar crime. His history suggests a high likelihood of recidivism, and his behavior while incarcerated, including disciplinary infractions related to drugs, further supports this concern.  The Government argues that releasing Ellis would not reflect the seriousness of his offense, provide adequate deterrence, or protect the public from further crimes.

After the Government filed this response, the Court appointed the Federal Public Defender to assist Ellis with his latest motion. Ellis's counsel then filed a motion to reduce sentence, which is also now pending before the Court, essentially reiterating the arguments Ellis made in his *pro se* motion.

4

The Government filed a response to the counseled motion, including a number of exhibits attached to that response. The Government again responds that Ellis's medical conditions, including a thyroid mass, spinal stenosis, high blood pressure, and a need for optical care, do not constitute grounds for release because these conditions do not meet the criteria for "extraordinary and compelling reasons" as defined by the Sentencing Commission. The Government further argues that Ellis's medical needs are being adequately addressed by the Bureau of Prisons, as evidenced by the extensive medical care he has received over the past 18 months. Additionally, the Government asserts that Ellis's attempt to invoke the "Other Reasons" category under U.S.S.G. § 1B1.13(b)(5) is an improper attempt to circumvent the established criteria for medical circumstances. The Government also provided the Court with Ellis's medical records, including:

- Exhibit 1: CT scan of the chest dated December 6, 2023, showing no acute infiltrate, effusion, or nodule, but identifying a 2 cm cystic nodule on the thyroid.

- Exhibit 2: NM PET/CT scan from April 17, 2024, indicating a hypermetabolic hypodensity in the right thyroid lobe, consistent with malignancy, and hypermetabolic activity in the descending colon.

- Exhibit 3: Ultrasound of the thyroid gland conducted on April 23, 2024, confirming a right lobe thyroid mass with no other acute pathology.

- Exhibit 4: BOP clinic records from June 3, 2024, detailing Ellis's adherence to treatment and lifestyle modifications, and noting his blood pressure and prescribed medications.

- Exhibit 5: Approval for a thyroid biopsy by BOP on June 18, 2024.

- Exhibit 6: Optometry records from July 8, 2024, documenting Ellis's complaint of blurry vision and the ordering of new glasses.

5

- Exhibit 7: PET/CT myocardial perfusion imaging from July 10, 2024, indicating low-risk cardiac status for any forthcoming surgical procedures.

- Exhibit 8: Cardiac clearance report dated July 23, 2024, for a thyroid biopsy, confirming normal cardiac PET/CT results.

- Exhibit 9: Consultation request for a US Guided FNA of the thyroid by South Florida ENT Associates, PA, dated August 29, 2024.

- Exhibit 10: Radiologist report from September 6, 2024, showing clear lungs, normal heart size, and stable osseous structures.

- Exhibit 11: CT of the lumbar spine from November 13, 2024, identifying significant disc herniations and recommending further evaluation.

- Exhibit 12: Medical Duty Status report from December 18, 2024, outlining Ellis's physical limitations and equipment provided for his spinal condition.

- Exhibit 13: BOP clinic visit on February 25, 2025, noting chronic back pain and scheduling a neurosurgery consultation.

- Exhibit 14: Medical encounter on March 25, 2025, documenting Ellis's complaint of bowel incontinence and pending GI consultation.

- Exhibit 15: Updated Medical Duty Status from April 9, 2025, including issuance of a back brace and completion of dental treatment.

## II

## A

Generally, "a court may not modify a term of imprisonment once it has been imposed" unless "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." 18 U.S.C. § 3582(c), (c)(1)(B). The First Step Act of 2018 is such a statute. Pub L. 115-391, 132 Stat. 5194. Before the First Step Act, only the Director of the Bureau of Prisons could move for a sentence reduction, forcing federal prisoners to "persuade and depend on" them "to bring the motion on their

behalf." *United States v. Thacker*, 4 F.4th 569, 575 (7t Cir. 2021). After the 2018 amendment of § 3582(c)(1)(A), federal prisoners now have the right to request a reduction in their sentences, "provided that the prisoner first allowed the Bureau to review the request and make a recommendation (or it let 30 days pass in silence)." *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).

As relevant here, a court "may reduce the term of imprisonment" if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress did not define "extraordinary and compelling reasons" in the statute. Instead, it delegated that task to the Commission. 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction . . ."). The only statutory limit Congress imposed on this power is that "[r]ehabilitation of the defendant alone" may not be an extraordinary and compelling reason. *Id.* § 994(t).

Effective November 1, 2023, the Commission promulgated a new policy statement applicable to compassionate release motions filed directly by prisoners. U.S. Sent'g Comm'n, Guidelines Manual § 1B1.13(a) (Nov. 2023). The Commission's 2023 amendment extended the applicability of the policy statement's categorization of "extraordinary and compelling" reasons that warrant a reduction to prisoner-filed motions, including: (1) medical circumstances of the defendant; (2) age of the defendant where the defendant is at least sixty-five years old; (3) circumstances necessitating a defendant to be a caregiver for an immediate family member; and (4) victim of abuse where the

defendant has been assaulted in prison by a BOP employee. *Id.* § 1B1.13(b)(1)–(4).

The policy statement states, in relevant part:

> **(b) Extraordinary and Compelling Reasons.**--Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> > **(1) Medical Circumstances of the Defendant**. —
> >
> > > (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> > >
> > > (B) The defendant is—
> > >
> > > > (i) suffering from a serious physical or medical condition,
> > > >
> > > > (ii) suffering from a serious functional or cognitive impairment, or
> > > >
> > > > (iii) experiencing deteriorating physical or mental health because of the aging process,
> > >
> > > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
> > >
> > > (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
> > >
> > > (D) The defendant presents the following circumstances—>

8

(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

**(2) Age of the Defendant**.—The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(3) Family Circumstances of the Defendant.—**

(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist

involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "immediate family member" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

**(4) Victim of Abuse.—** The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

(A) sexual abuse involving a "sexual act," as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or

(B) physical abuse resulting in "serious bodily injury," as defined in the Commentary to §1B1.1 (Application Instructions);

that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.

For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

**(5) Other Reasons.**--The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

**(6) Unusually Long Sentence.**--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

**(c) Limitation on Changes in Law.**--Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

**(d) Rehabilitation of the Defendant.**--Pursuant to 28 U.S.C. 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

**(e) Foreseeability of Extraordinary and Compelling Reasons.**--For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

*Id.* § 1B1.13(b)(5)–(e).

The Seventh Circuit has described a two-step process for evaluating a prisoner-filed motion for compassionate release. First, "the prisoner must identify an 'extraordinary and compelling' reason warranting a sentence reduction." *Thacker*, 4 F.4th at 576. Second, "[u]pon a finding that the prisoner has supplied such a reason," a court "consider[s] any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner." *Id.* "[T]he movant bears the burden of establishing extraordinary and compelling reasons that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021) (quotation marks omitted). When determining whether a prisoner has raised an extraordinary and compelling reason, a court should consider all the reasons raised "[i]ndividually and collectively." *United States v. Vaughn*, 62 F.4th 1071, 1073 (7th Cir. 2023). Even if a reason on its own is "insufficient to meet the threshold," the collective effect of all the reasons raised may be extraordinary and compelling. *Id.*

**B**

Examining § U.S.S.G. 1B1.13, the only potential basis for which Ellis could be eligible for compassionate release is the provisions "catch all" "other reasons" provision. Although Ellis asserts a number of medical conditions as outlined at length, *supra*, none of his asserted conditions "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" as required pursuant to § 1B1.13(b)(1). No doubt it is for this reason that his counsel asserts he is eligible for compassionate release under the "catch all" provision, rather than the "medical circumstances" provision.

However, as the Government argues, the "other reasons" must differ from those specifically addressed in the earlier defined categories, that being (1) medical circumstances, (2) age of the defendant, (3) family circumstances of the defendant,

or (4) that the defendant was a victim of abuse while incarcerated. "Although this category is flexible, it is not an opportunity for defendants to evade the strictures of the defined categories for relief. Where, as here, the defendant argues that he is not receiving sufficient medical care, the Court is still bound by the requirements of the medical circumstances category in the policy statement." *United States v. Ciarlo*, 2024 WL 2782506, at *3 (W.D. Wash. May 30, 2024). As already noted, Ellis fails to meet the "medical circumstances" criteria, and he cannot circumvent those criteria by simply citing to the "other reasons" category when his claims are, in fact, medical.

Even assuming he could somehow demonstrate eligibility for compassionate release in one of the categories defined by § 1B1.13, the Court has already previously found that the § 3553(a) factors weigh against compassionate release. Nothing has changed to alter the Court's previous conclusion on this question, As this Court stated in *United States v. DeSilva*, 2025 WL 10477014, *2 (C.D. Ill; April 8, 2025), "'[T]here is a presumption against revisiting previously decided issues; '[u]nder the law of the case doctrine, a court generally should not reopen issues decided in earlier stages of the same litigation.' " *quoting, SFG v. Musk*, No. 19-cv-02198, 2021 WL 972887, at *1 (N.D. Ill. Feb. 10, 2021), *quoting United States v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008) (citations omitted). Ellis submits no arguments to this Court which it has not already considered with regard to the weighing of the § 3553(a) factors sufficient to alter the Court's previous conclusions on the question.

For good or for ill, 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13 contain no limitations on the number of compassionate release motions a defendant may file. Nor do these provisions erect any procedural hurdles to filing successive motions like 28 U.S.C. § 2255(h) erects for collateral attacks. Consequently, a defendant can file an unlimited number of compassionate release motions so long as he meets

exhaustion requirements. Accordingly, the law of the case doctrine supplies the only limiting principle on these successive motions and should be strictly applied to avoid the squandering of judicial resources by requiring consideration of repeated motions raising the same issues on the same facts over and over again.

### III

For the reasons stated, *supra*, Ellis's, *pro se* motion and counseled amended motion for compassionate release are denied. (D. 62 & 74.)  Any future motion for compassionate release filed by Ellis must state with specificity what *new* facts are presented which would constitute a basis for eligibility for compassionate release pursuant to § 1B1.13 and how those facts alter the Court's previous conclusion that the § 3553(a) factors preclude compassionate release. Failure to do so will result in the denial of the motion with citation to this Order.

*It is so ordered.*

Entered on May 14, 2025

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE